1  NEAL S. SALISIAN, SBN 240277
   neal.salisian@salisianlee.com
2  JARED T. DENSEN, SBN 325164
   jared.densen@salisianlee.com
3  PATTY W. CHEN, SBN 322992
   patty.chen@salisianlee.com
4  **SALISIAN | LEE LLP**
   550 South Hope Street, Suite 750
5  Los Angeles, California 90071-2924
   Telephone:  (213) 622-9100
6  Facsimile:   (800) 622-9145

7  MARISA D. POULOS (SBN 197904)
   marisa.poulos@balboacapital.com
8  **BALBOA CAPITAL**
   575 Anton Boulevard, 12th Floor
9  Costa Mesa, California 92626
   Tel: (949) 399-6303

10

11 Attorneys for Plaintiff
   AMERIS BANK d/b/a BALBOA CAPITAL

# THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL,<br><br>Plaintiff,<br><br>vs.<br><br>THE COTTAGE PROS LLC, a Michigan limited liability company; and CHRISTOPHER BARNUM, an individual,<br><br>Defendants. | Case No.:<br><br>**PLAINTIFF AMERIS BANK D/B/A BALBOA CAPITAL'S COMPLAINT FOR:**<br><br>**1. BREACH OF BUSINESS LOAN AGREEMENT**<br><br>**2. BREACH OF PERSONAL GUARANTY** |

COMPLAINT

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation doing business as Balboa Capital ("Balboa" or "Plaintiff"), alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Ameris Bank d/b/a Balboa Capital ("Balboa" or "Plaintiff") is, and at all times relevant to this action was, a Georgia state-chartered banking corporation with Balboa Capital as one if its divisions, which division has its principal place of business in the State of California, County of Orange.

2. Defendant The Cottage Pros LLC ("Cottage Pros") is, and at all times relevant to this action was, a Michigan limited liability company with its principal place of business in the County of Benzie, State of Michigan.

3. Defendant Christopher Barnum ("Barnum") (collectively with Cottage Pros, "Defendants"), an individual, is, and at all times relevant to this action was, a resident of the County of Benzie, State of Michigan, and was an officer, member, director, agent and/or owner of Defendant Cottage Pros. Based on information and belief, including the Driver's License submitted by Barnum to Balboa, Barnum is domiciled in Beulah, Michigan 49617-9456.

4. Plaintiff is informed and believes, and thereon alleges, that Barnum is the sole member of Cottage Pros. Thus, Cottage Pros is a citizen of the State of Michigan.

5. Plaintiff is informed and believes, and thereon alleges, that each defendant, directly or indirectly, or through agents or other persons, was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and thereon alleges that each defendant acted pursuant to and within the scope of the relationships alleged above, that each defendant knew or should have known about the foregoing, and that each defendant authorized, ratified, adopted, approved, controlled, and aided and abetted the conduct of all other defendants.

6. The obligations sued upon herein are commercial in nature and the Complaint herein is not subject to the provisions of California Civil Code Sections 1801, *et seq.* (Unruh Retail Installment Sales Act) and/or California Civil Code Sections 2981, *et seq.* (Rees-Levering Motor Vehicle Sales and Finance Act).

7. Pursuant to the Business Loan Agreement and the Personal Guaranty described herein, Defendants agreed that those documents would be governed by the laws of the State of California. In addition, the Business Loan Agreement, in pertinent part, provides:

> **15. CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** Borrower and Lender submit to the jurisdiction of California and agree that any action or proceeding to enforce this Agreement or arising out of this Agreement will be exclusively commenced, initiated and litigated in the California State Courts located in Orange County and/or in the United States District Court for the Central District of California, Santa Ana Division.

8. <u>Jurisdiction</u>. This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332(a).

9. Specifically, as described above, Balboa is a citizen of the States of Georgia and California; Cottage Pros is a citizen of the State of Michigan; and Barnum is a citizen of the State of Michigan. As such, neither Cottage Pros nor Barnum is a citizen of Georgia or California, and there exists complete diversity of citizenship between Plaintiff and each of the Defendants. Finally, as alleged herein, the amount in controversy exceeds $75,000.

10. <u>Venue</u>. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and in the Southern Division pursuant to 28 U.S.C. § 84(c)(3).

11. All officers of Balboa, including all witnesses, and all of Balboa's documents are located in the State of California, County of Orange. The transactions at issue in this Action occurred in the State of California, County of Orange.

## FIRST CAUSE OF ACTION

### (Breach of Business Loan Agreement)

### (Against Cottage Pros)

12. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

13. In or prior to February 2024, Balboa is informed and believes that Cottage Pros initiated and engaged with MGM Funding Enterprises Incorporated (the "Finance Broker"), located at 556 Empire Boulevard, Brooklyn, NY 11225 to coordinate the acquisition and finance the business loan.

14. Balboa is informed and believes, and therefore alleges, that the Finance Broker initiated and coordinated the submission of Cottage Pros' electronic loan applications to Balboa. Upon review, the Finance Broker concluded that Balboa offered agreeable financing terms commensurate with Cottage Pros' requirements. Thereafter, the Finance Broker accumulated and submitted to Balboa the requisite signatories, documentation, and financial information from Cottage Pros to obtain its business loan.

15. On or about February 29, 2024, Cottage Pros was provided a certain written Business Loan Agreement No. F500908-001 (the "BLA"). Under the terms of the BLA, Balboa loaned to Cottage Pros the sum of One Hundred Fifty Thousand Dollars and Zero Cents ($150,000.00), solely to be used for commercial purposes and not for personal, family or household purposes. The terms of the BLA required Cottage Pros to make eighty (80) weekly payments of $2,700.00. A true and correct copy of the BLA is attached as **Exhibit A** and incorporated herein by reference.

16. The terms of the BLA incorporate by reference the terms of the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debit) (the "AA"). Pursuant to the AA, Cottage Pros agreed to enroll in the Automatic Payment Plan and authorized Balboa to collect payments required under

the terms of the BLA from a checking account designated by Cottage Pros. Cottage Pros provided the bank account information, which made it possible for Balboa to electronically debit payments under the BLA. The terms of Balboa's Automatic Payment Plan included in the AA provide, in pertinent part, as follows:

> **AUTOMATIC PAYMENT PLAN:** Enrollment in Lender's Automatic Payment Plan is required for loan approval and consideration. By signing below, Borrower agrees to enroll in this Automatic Payment Plan and authorizes Lender or its designee to collect payments required under the terms of Borrower's Business Loan Agreement by initiating automated clearing house ("ACH") Debit entries to the checking account indicated below . . . . If Borrower revokes the authorization or Lender suspends or terminates Borrower's enrollment in the Automatic Payment Plan, Borrower still will be responsible for making timely payments pursuant to the alternative payment methods described in the Business Loan Agreement.

A true and correct copy of the AA initialed by Barnum as the President of Cottage Pros is attached hereto as **Exhibit A (Page 2)** and incorporated herein by reference. The same day, the parties entered into a Change Addendum changing the signer title for Barnum from "President" to "Owner" of Cottage Pros. A true and correct copy of the Change Addendum is attached hereto as **Exhibit A** (Page 10) and incorporated herein by reference.

17. Paragraph 13(a) of the BLA provides that an Event of Default "will constitute, without notice or demand, a default under this Agreement and all other agreements between Lender" and occurs when "(a) Lender is unable to collect any Automatic Payment Plan payment on three consecutive dates due and/or, Borrower fails to pay any Obligations on three consecutive dates due."

18. On February 29, 2024, and in connection with the BLA, Cottage Pros executed and delivered to Balboa a promissory note, "in connection with that certain Business Loan Agreement No. F500908-001" (the "Note"). In addition, Barnum personally guaranteed the terms of the Note. The Note confirmed that Defendants acknowledged and promised to pay Balboa the Total Repayment

Amount as shown on the first page of the BLA and to comply with the Payment Schedule included in the BLA. Moreover, the Note confirmed Defendants agreed to enroll in and initiate all payments or transfers to Balboa in accordance with the AA. The Note is incorporated into the BLA at pages 7-8. A true and correct copy of the Note is attached hereto as **Exhibit A (Pages 7-8)** and incorporated herein by reference.

19. The last payment received by Balboa was credited toward the weekly payment due for January 30, 2025. Therefore, on or about February 20, 2025, Cottage Pros breached the BLA by failing to make three consecutive weekly payments. Moreover, no further payments have been made since February 20, 2025. Cottage Pros' failure to make timely payments is a default under the terms of the BLA, and the terms of the Note.

20. In accordance with the BLA, and as a proximate result of Cottage Pros' default thereunder, Balboa declared the entire balance of the payments under the BLA to be immediately due and payable to Balboa. As of the date of the filing of Balboa's Complaint, there became due the sum of $86,400.00, in unpaid obligations, which are exclusive of interest, attorneys' fees and costs. No portion of such sum has been paid by Cottage Pros.

21. Balboa has performed all of the terms, conditions, and covenants required to be performed by Balboa under the terms of the BLA, except as excused or prevented by the conduct of Cottage Pros.

22. As a proximate result of Cottage Pros' breach of the BLA, Balboa has been damaged in the total sum of **$86,400.00** plus prejudgment interest from February 20, 2025, until the entry of judgment herein.

23. Under the terms of the BLA, Cottage Pros promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of the BLA. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### (Breach of Personal Guaranty)

### (Against Barnum)

24. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

25. Concurrent with the execution of the BLA, and in order to induce Balboa to enter into the BLA with Cottage Pros, Barnum guaranteed, in writing, the payment of the then existing and future indebtedness due and owing to Balboa under the terms of the BLA (the "Guaranty").  The Guaranty is incorporated into the BLA as Section 27.  *See* **Exhibit A (Page 6, Section 27)**.

26. Balboa has performed all the terms, conditions, and covenants required to be performed by Balboa under the terms of the Guaranty, except as excused or prevented by the conduct of Barnum.

27. Following a default by Cottage Pros under the terms of the BLA, Balboa demanded Barnum to make the payments required under the BLA. Barnum failed to meet the Guaranty obligations and make the payments required under the BLA.

28. Pursuant to the terms of the Guaranty, $86,400.00, plus prejudgment interest from February 20, 2025, until the entry of judgment herein, is due and payable to Balboa from Barnum. This Complaint, in addition to previous demands, shall constitute further demand upon Barnum, to pay the entire indebtedness due and owing under the terms of the BLA, from Cottage Pros to Balboa.

29. Under the terms of the Guaranty, Barnum promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of the BLA and the Guaranty.  Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs, as against Barnum.

//

//

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Balboa prays for judgment against Defendants, and each of them, as follows:

### On All Causes Of Action

1. The sum $86,400.00;
2. Prejudgment interest from February 20, 2025, to the date of entry of judgment;
3. Reasonable attorneys' fees and costs;
4. Costs of suit as provided by law; and
5. Such other fees and further relief that the Court considers proper.

DATED: March 31, 2025					SALISIAN | LEE LLP

							By: _____
							Neal S. Salisian
							Jared T. Densen
							Patty W. Chen

							Attorneys for Plaintiff
							AMERIS BANK d/b/a BALBOA CAPITAL